IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>     v.<br><br>CHRISTOPHER BRANDON MILLER, aka: "MELLOW,"<br><br>                       Defendant. | Case No. 3:17-cr-00063-TMB-DMS-2<br><br>ORDER ON DEFENDANT'S MOTION TO WITHDRAW PLEA<br>[Dkt. 476] |

## I.      INTRODUCTION

The matter comes before the Court on Defendant Christopher Brandon Miller's Motion to Withdraw Plea (the "Motion").[1] Miller moves to withdraw his guilty plea due to "erroneous or inadequate legal advice prior to the plea."[2] Specifically, Miller argues that counsel failed by (1) not advising him that the factual basis in the Plea Agreement could be sufficient to support a leadership enhancement, (2) inadequately explaining the mechanics of the sentencing statute 18 U.S.C. § 3553 and that Miller could receive a custodial sentence above the range recommended in the Sentencing Guidelines, and (3) not investigating and pursuing "relief based on Government investigators' recording and playing back [of] attorney-client telephone calls" between Miller and his former counsel, Chester Gilmore.[3] The Government opposes the Motion.[4] A hearing on the

---

[1] Dkt. 476 (Motion).

[2] *Id.* at 3.

[3] *Id.* at 3–4.

[4] Dkt. 483 (Opposition).

1

Motion was held on January 8, 2021.[5] The matter is fully briefed and ready for disposition. For the reasons discussed below, the Motion is **GRANTED**.

## II. BACKGROUND

This case arises out of an alleged conspiracy between Miller, his co-defendant and then-attorney Kit Lee Karjala, and others, to smuggle controlled substances into the Anchorage Correctional Complex ("ACC") for distribution to other inmates.[6] Miller was indicted on several counts including for Drug Conspiracy; Possession of Controlled Substances with Intent to Distribute; Conspiracy to Provide Contraband in Prison; Money Laundering Conspiracy and Money Laundering; and Providing, Attempting to Provide, and Obtaining Contraband in Prison.[7] Miller and the Government subsequently entered into a Plea Agreement, whereby Miller agreed to plead guilty to Count 1 of the Superseding Indictment, for Drug Conspiracy,[8] in exchange for the Government agreeing to dismiss the remaining counts in this case and charges in case 3:18-cr-00084-SLG.[9] Miller subsequently pleaded guilty pursuant to the Plea Agreement.[10]

### A. *Leadership Enhancement*

Prior to the Miller's sentencing hearing, U.S. Probation ("USPO") issued its first Revised Final Presentence Investigation Report ("PSR"), and assigned Miller an offense level of 21 and a

---

[5] Dkt. 490 (Minute Entry).

[6] Dkt. 151 at 3 (Superseding Indictment).

[7] *See* Dkts. 27 (Indictment); 151; 483 at 3–4.

[8] *See* 2l U.S.C. §§ 846 and 841(a)(1), (b)(1)(C), (b)(1)(D), and (b)(1)(E).

[9] Dkt. 371 at 2 (Plea Agreement).

[10] Dkt. 390 (Minute Entry).

criminal history category of VI.[11] The custodial sentence under the Sentencing Guidelines was 77 to 96 months and the recommended sentence was 60 months (via a downward variance under § 3553(a)).[12] USPO assigned a two level "Aggravating Role" enhancement under the § 3B1.1 of the Sentencing Guidelines because "defendant directed others in the conspiracy" and was "assessed to be an organizer, leader, manager, or supervisor in the criminal activity" (the "Leadership Enhancement").[13]

Paragraph 19 of the Revised Final PSR, which Miller did not object to prior to the Sentencing Hearing, states:

> During the investigation, [special agents ("SAs")] listened to recorded jail calls during which Miller directed others with regard to retrieving controlled substances to be brought into the jail. Miller also directed money laundering activity, to include amounts of deposits, what accounts to deposit into, and dates by which to deposit the funds. For example, according to Karjala's plea agreement in this case, Miller directed another individual to transfer $2,100 in drug proceeds from that individual's bank account to Karjala's bank account. The transfer represented Miller paying Karjala to deliver drugs to him or another inmate at ACC.[14]

Also relevant to the application of the Leadership Enhancement is Miller's admission in his Plea Agreement that he:

> joined the conspiracy knowing that its purpose was to smuggle drugs into ACC, and worked to further that purpose by coordinating the delivery of drugs to others for delivery into ACC, receiving packages of drugs from others, by concealing some of those drugs inside his body in order to hide them from ACC personnel, by distributing the drugs he received to other inmates inside ACC, and by conducting financial transactions to pay for the drugs smuggled into ACC, and to pay individuals who procured and smuggled those drugs into ACC on his behalf.[15]

---

[11] Dkt. 404 (Revised Final PSR).

[12] *Id.* at 1.

[13] *Id.* at ¶ 29.

[14] *Id.* at ¶ 19.

[15] Dkt. 371 at 4.

The parties did not reach an agreement about the application of the Leadership Enhancement prior to entry of the Plea Agreement or prior to the Sentencing Hearing, instead agreeing to litigate the issue at the Sentencing Hearing.[16]

### B. *Sentencing Hearing*

Miller's Sentencing Hearing began on January 2, 2020.[17] The Court indicated that, in fashioning a sentence, it would rely on the Revised Final PSR, the parties' sentencing memoranda, and the arguments or statements made at the Hearing.[18] The vast majority of the Hearing focused on the application of the Leadership Enhancement.[19]

Mr. Gilmore, Miller's attorney at the Hearing, objected to application of the Leadership Enhancement.[20] He objected to Paragraph 19 of the Revised Final PSR, arguing that there was no evidence to support the "blank[et] statements" stated therein.[21] The Court then raised the factual basis of the Plea Agreement which states that Miller coordinated delivery of drugs, received packages, conducted financial transactions, among other tasks.[22] Mr. Gilmore also argued that the factual statement was not "sufficient or specific enough," to which the Court replied that

---

[16] Dkt. 483-3 at 2–5 (emails between Government and Gilmore regarding Guidelines calculation and various sentencing issues).

[17] Dkts. 410 (Minute Entry); 483-2 (Transcript of January 2020 Sentencing Hearing).

[18] Dkts. 483-2 at 5:23-6:1; 405 (Miller Sentencing Memorandum); 406 (Government Sentencing Memorandum); 407 (Sealed Sentencing Memorandum Addendum); 409 (Sealed Sentencing Memorandum Addendum).

[19] *See* Dkt. 483-2 at 8–26.

[20] *See id.* at 9:11-19.

[21] *Id.* at 9:11-14.

[22] *Id.* at 9:20-10:4.

"[r]easonable minds can differ, but I think it's clear in the factual basis that he's admitting that he was, at the very least, coordinating these activities, which that, in conjunction with Paragraph 19, seems to indicate to me that he was a leader of this activity."[23] The Court also cited the tape recordings and other evidence included in the Government's sentencing memorandum as supportive of the findings in Paragraph 19 of the Revised Final PSR.[24] The Court then permitted Mr. Gilmore to argue against the sufficiency of the Government's evidence, stating "if you've got information that you want to give me that you believe undercuts that argument [made by the Government], I'm happy to hear it . . . I'm happy to hear what you have to say here today."[25] Mr. Gilmore then proceeded to argue against the sufficiency of the Government's evidence.[26]

After hearing arguments from both Mr. Gilmore and the Government, the Court concluded that "Gilmore may have an argument" if the Court reviews the messages presented by the Government in isolation, but ultimately the enhancement was appropriate because of the evidence in conjunction with the language in the Plea Agreement.[27] The Court stated that it would apply the two-level enhancement.[28] The Court further opined that it would likely impose a sentence not above the "actual guideline range" of 63 to 78 months.[29]

---

[23] *Id.* at 10:5-12.

[24] *Id.* at 11:5-10.

[25] *Id.* at 12:24–13:5.

[26] *See id.* at 13–19.

[27] *Id.* at 26:8-15.

[28] *Id.* at 26:14-15.

[29] *Id.* at 30:4-17. Before the parties' arguments at the Sentencing Hearing, USPO clarified that the offense level should be 19, not 21, and that the criminal history should remain at VI. *Id.* at 3:5-6. This resulted in a Guideline recommendation of 63 to 78 months in custody. *Id.* at 3:10. The

5

The Court concluded the Sentencing Hearing by soliciting the parties' sentencing recommendations and, at the request of Mr. Gilmore, previewed its analysis of the § 3553(a) factors.[30] The Court also offered Mr. Gilmore additional time to "marshal [his] sentencing arguments."[31] Mr. Gilmore accepted the offer for supplemental briefing; however, no additional briefing was filed. After a hearing before Magistrate Judge Deborah Smith, Mr. Gilmore withdrew as counsel for Miller and new counsel was appointed, in part because of Miller's desire to potentially withdraw from his Plea Agreement.[32] Current counsel for Miller, Ms. Cassandra Stamm, entered an appearance in August 2020.[33]

### C. Recorded Calls between Mr. Gilmore and Miller

As part of the discovery in this case—and at issue here—the Government produced information about at least 19 calls between Mr. Gilmore and Miller that were recorded by the Alaska Department of Corrections' ("DOC") Securus telephone system.[34] Some calls were

---

Court indicated that it would impose a sentence not above this actual range, even taking into consideration a § 3553 downward variance for "mixture or substance" versus "actual" methamphetamine. *Id.* at 29:24-30:17.

[30] *Id.* at 29:8-11, 30:19-24.

[31] *Id.* at 30:10-11.

[32] *See* Dkts. 412 (Motion for *Ex Parte* Representation Hearing); 415 (Text Order Granting Motion for *Ex Parte* Hearing and Motion to Withdraw Counsel); 417 (Minute Entry); 418 (Minute Entry); 444 (Notice of Appearance for Cassandra Lea Stamm).

[33] Dkt. 444.

[34] Dkts. 488-1 at ¶ 4 ("I do believe I previously received them [the Government's productions regarding the phone calls]") (Gilmore Supp. Decl.); 483-8 (Letter from Government Filter Team to Gilmore re: Recorded Calls (July 18, 2018)); 483-12 (Email from Government to Gilmore re: Additional Recorded Calls (March 13, 2019)).

listened to by Sgt. Thomas Elmore.[35] Mr. Gilmore's phone number was not registered with the Alaska DOC's Securus telephone system, so the calls were inadvertently recorded.[36] The Government asserts that the prosecution team has not listened to the phone calls and asked DOC to not listen to the calls, either.[37] Mr. Gilmore was on notice of the recorded calls in July 2018 and March 2019, before Miller entered into his Plea Agreement in September 2019.[38]

    D.    *Motion to Withdraw Plea*

Miller moves to withdraw his plea on three separate bases. First, Miller argues that he "received inadequate legal advice concerning the sentence he could receive as a result of his plea[.]"[39] Specifically, Miller argues that he was unaware that the language in Paragraph 19 of the Revised Final PSR would "foreclose" any argument against the Leadership Enhancement, and that he "understood [that] his attorney would be able to argue that no role enhancement should apply."[40] Fundamentally, Miller states that he did not understand that he was admitting that he was a leader or organizer of the criminal enterprise and would not have signed the Plea Agreement if he had known that.[41]

Second, Miller argues that he and Mr. Gilmore did not discuss the possibility that the Court could impose a sentence above the calculated Sentencing Guideline range and up to the maximum

---

[35] Dkts. 483-8 at 2; 483-12.

[36] *See* Dkt. 483-8 at 1.

[37] *Id.* at 1–2.

[38] *See* Dkts. 483-8; 483-12; 371.

[39] Dkt. 476 at 6.

[40] *Id.*

[41] *Id.*

7

statutory penalty.[42] Miller thought he would not receive a sentence greater than 41 months imprisonment.[43] He argues that Mr. Gilmore, his former counsel, failed to sufficiently advise Miller of Miller's possible sentencing exposure and that this failure affected his decision to enter the guilty plea.[44]

Third, Miller argues that the 19 telephone calls between Miller and Mr. Gilmore were "not disclosed prior to Mr. Miller's plea and [are] new information," which constitute a fair and just reason for withdrawal.[45] Miller states that he "did not know how many other conversations . . . were recorded or who listened to these conversations . . . Had I known everything that I know now . . . I would not have pled guilty."[46] Miller argues that the calls constitute potential Sixth Amendment violations in the case.[47] At oral argument, counsel for Miller indicated that, even if the calls are not new information, the calls still justify withdrawal because Miller was unaware of the calls and did not review them with Mr. Gilmore prior to entering his plea. Mr. Gilmore acknowledges that he "did not listen to each and every recorded call" and did not recall whether he discussed the Government's production or the details of the calls with Miller.[48]

---

[42] *Id.* at 7.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 9–10.

[46] Dkt. 476 at 15 ¶ 4 (Miller Decl.).

[47] *Id.* at 9.

[48] Dkt. 488-1 at ¶¶ 3–4.

In Opposition, the Government argues that there is no "fair and just" reason for Miller to withdraw his plea and argues Miller's Motion is a case of buyer's remorse.[49] First, in response to Miller's argument that he was unaware that the language in the factual basis of the Plea Agreement could foreclose argument on the Leadership Enhancement, the Government argues that the record shows that the Court used two bases on which to find that the enhancement applied.[50] The argument was *not* foreclosed, the Government argues, because Mr. Gilmore was in fact able to make substantive argument against application of the enhancement.[51] The Government states that "[h]ad the defendant's argument truly been foreclosed by the admissions in his [f]actual [b]asis—and had the Court relied solely on the [f]actual [b]asis to make its finding—there would have been no need for Mr. Gilmore to attempt to undermine the Court's reliance on [P]aragraph 19[.]"[52] The Government states that, as a legal matter, the language admitted to by Miller in the Plea Agreement was not enough to apply the Leadership Enhancement.[53]

Second, in response to Miller's argument that he was not aware that the Court could impose a sentence above the calculated Sentencing Guideline range, the Government states that Miller was informed of his potential sentence at several points.[54] Mr. Gilmore advised Miller that his potential range could be as high as 84 to 96 months.[55] Miller was also advised through the Change

---

[49] *See* Dkt. 483 at 9–10.

[50] *Id.* at 18–19.

[51] *Id.* at 20.

[52] *Id.* at 21.

[53] *Id.*

[54] *Id.* at 11, 16.

[55] *Id.* at 11; Dkt. 476 at 20 ¶ 4 (Gilmore Decl.).

9

of Plea Hearing and the text of his Plea Agreement that his sentence could be as high as 20 years.[56] Thus, the Government argues, Miller has not shown a "fair and just" reason to allow his withdrawal from the Plea Agreement.

Third, in response to Miller's argument about the recorded telephone calls, the Government points out that the information was provided to him "in three tranches starting more than two years prior" to the change of plea.[57] The Government also argues that the telephone calls at issue did not and could not constitute a Sixth Amendment violation and therefore would not have changed Miller's decision to plead guilty.[58]

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) ("Rule 11") permits a defendant to withdraw from an accepted plea of guilty when "the defendant can show a fair and just reason for requesting the withdrawal."[59] "The defendant has the burden to show a fair and just reason for withdrawal of a plea."[60] The standard must be applied liberally.[61] A defendant only needs to show that "the proper legal advice of which he was deprived 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty.'"[62] "Erroneous or inadequate legal advice may . . . constitute a fair and just reason for plea withdrawal, even without

---

[56] Dkt. 483 at 16–17.

[57] *Id.* at 24.

[58] *Id.* at 30–31.

[59] Fed. R. Crim. P. 11(d)(2)(B).

[60] *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003).

[61] *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011).

[62] *Id.* (quoting *United States v. Garcia*, 401 F.3d 1008, 1011–12 (9th Cir. 2005)).

a showing of prejudice, when the motion to withdraw is made presentence."[63] A defendant can withdraw an otherwise valid plea, as long as they can demonstrate that a "fair and just" reason exists.[64]

## IV. ANALYSIS

The Court finds that Miller has demonstrated a "fair and just reason" for requesting the withdrawal of his plea because of the inadequate legal counsel provided by Mr. Gilmore regarding the 19 recorded attorney-client telephone conversations at issue, and on that basis **GRANTS** the Motion. Because Miller has demonstrated a "fair and just reason" through his third argument, the Court does not reach the merits of Miller's first two arguments, relating to the application of the Leadership Enhancement or Miller's understanding of the potential custodial sentence that the Court may impose at sentencing.

The Ninth Circuit has made clear that the liberal standard provided by Rule 11 allows defendants like Miller the ability to withdraw their plea on a basis of inadequate legal advice, even if they do not show prejudice.[65] Miller does not need to show that his potential Sixth Amendment challenges will be successful on the merits.[66] Miller only needs to show that, had he reviewed the calls with Mr. Gilmore and reviewed the relevant discovery from the Government, he plausibly would have changed his mind and not pleaded guilty.[67] The Court is persuaded that Miller (or a

---

[63] *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (citation omitted).

[64] *Id.*

[65] *Id.*

[66] *Id.* at 1168.

[67] *See id.* at 1167.

reasonable person in Miller's shoes) could have plausibly changed his mind had he known the full extent of the recorded calls prior to his pleading guilty.

Miller's testimony is that he did not know how many of his conversations with Mr. Gilmore were recorded by DOC or who listened to those conversations.[68] Miller states that he heard of a possible issue with the Securus system recording attorney-client conversations, but that when he raised the issue with Mr. Gilmore, Mr. Gilmore dismissed it.[69] Mr. Gilmore largely corroborates Miller's account. Mr. Gilmore admits that he received the productions from the Government regarding these calls and that he did not recall whether he discussed the productions with Miller.[70] Gilmore also admits, however, that he did not listen to every recorded call and acknowledged that discovery involved "a large volume of recorded jail calls."[71] Indeed, recorded jail calls have been an important issue in this case and Miller states that he would have wanted to "pursue the issue just like we had pursued the issues concerning my communications with Ms. Karjala."[72] Mr. Gilmore did not adequately advise his client when he failed to inform Miller of the scope and details of these calls, and the Government's productions.

The Government's argument that the calls are not newly discovered evidence has merit, since the evidence was produced to Mr. Gilmore well in advance of Miller's plea.[73] The Government appears to have done an admirable job handling the disclosure and production of

---

[68] Dkt. 476 at 15 ¶¶ 3–4.

[69] *Id.* at ¶ 3.

[70] Dkt. 488-1 at ¶ 4.

[71] *Id.* at ¶ 3.

[72] Dkt. 476 at 15 ¶ 4.

[73] *See* Dkt. 483 at 23–24.

these recorded calls when that information was revealed to the Government. The Government further represents that the prosecution team did not listen to the calls and that the calls were promptly produced to defense counsel.[74] Disclosure, however, does not defeat Miller's argument that Mr. Gilmore was deficient by failing to communicate those disclosures to his client.

Similarly, the Government's argument that Miller was on notice "of the possible [Sixth] Amendment issue surrounding the recording of jail calls" and Mr. Gilmore's advice "that this was not an issue worth pursuing" is unavailing given the volume of calls at issue and the fact that recorded jail calls have been a topic of great interest in this case. A reasonable person would plausibly want to know the full extent to which these attorney-client calls were recorded, listened to, or otherwise compromised, prior to entering into a guilty plea. Had Miller known about these 19 calls, he would have been able to discuss them with Mr. Gilmore and evaluate whether there was any basis to bring a Sixth Amendment challenge or pursue other legal recourse. Unfortunately, due to Mr. Gilmore's inadequate representation, Miller never had the chance to do so. Miller has thus demonstrated a "fair and just reason" for withdrawing his plea.

## V. CONCLUSION

Accordingly, the Motion at Docket 476 is **GRANTED**. The parties are **ORDERED** to confer and be prepared to provide the Court with three mutually-agreeable trial dates for this matter and 3:18-cr-00084-TMB-DMS-1 at the *telephonic* Status Hearing set for January 22, 2021.
IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 19th day of January 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[74] *See* Dkts. 483-8; 483-12.